# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | CRIMINAL NO. 1:92-CR-319 |
| : | |
| v. : | (Chief Judge Conner) |
| : | |
| **ORLANDO SANCHEZ,** : | |
| : | |
| **Defendant** : | |

## **MEMORANDUM**

A jury found defendant Orlando Sanchez ("Sanchez") guilty of one count of conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846; one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g); and one count of using and carrying a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c). Because Sanchez had three or more qualifying prior convictions under the Armed Career Criminal Act ("ACCA" or "the Act"), his statutory maximum sentencing exposure was increased to life imprisonment. See 18 U.S.C. § 924(e)(1). The court sentenced Sanchez to an aggregate term of 386 months' imprisonment.

Sanchez now moves the court to vacate his sentence in light of the United States Supreme Court's decision in Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015), which invalidated the ACCA's residual clause as unconstitutionally vague. (Docs. 264, 267). We hold that Sanchez is ineligible for relief under Johnson and will accordingly deny his motion.

I.      **<u>Factual Background & Procedural History</u>**

On December 15, 1992, a federal grand jury returned a three-count indictment against Sanchez and three others. (Doc. 1). The indictment charged Sanchez with one count of conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846 (Count 1); one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count 2); and one count of using and carrying a firearm in relation to drug trafficking in violation of 18 U.S.C. § 924(c) (Count 3). (<u>Id.</u>) Before trial, the government filed an information seeking an enhanced sentence under the ACCA, 18 U.S.C. § 924(e), based on five of Sanchez's prior offenses:

- a 1982 conviction in the Superior Court of California for grand theft from the person;

- two 1983 convictions in the Municipal Court of Los Angeles, California, for burglary; and

- three 1989 convictions in the Court of Common Pleas of Dauphin County, Pennsylvania, for delivery of cocaine.

(Doc. 6).

The jury found Sanchez guilty of all three counts in the indictment. Sanchez's statutory sentencing exposure was substantial. Count 1 carried a mandatory minimum term of 10 years' imprisonment and a maximum of life. Count 2, due to the ACCA enhancement, carried a mandatory minimum term of 15 years and a maximum of life. And Count 3 required a consecutive 5-year term of imprisonment. The presentence report calculated a Guidelines imprisonment range of 360 months to life. On August 19, 1993, the late Judge William W. Caldwell

sentenced Sanchez to an aggregate term of 386 months' imprisonment, consisting of concurrent 326-month terms on each of Counts 1 and 2, and a 60-month term on Count 3, to run consecutively to Count 1. (Doc. 102). Sanchez appealed, the Third Circuit Court of Appeals affirmed, and the United States Supreme Court denied *certiorari*. See United States v. Sanchez, 31 F.3d 1175 (3d Cir.) (table), cert. denied, 513 U.S. 1030 (1994).

Sanchez has had three prior Section 2255 motions denied or dismissed by this court. Sanchez filed his first motion in May 2001, and Judge Caldwell denied that motion as untimely. (Docs. 185, 195). More than ten years later, Sanchez filed a second Section 2255 motion which Judge Caldwell dismissed as an unauthorized second or successive motion. (Docs. 245, 246). On June 8, 2015, Sanchez filed a third Section 2255 motion, invoking the Supreme Court's decision in Descamps v. United States, 570 U.S. 254 (2013), to challenge his armed-career-criminal status. (Doc. 255). Judge Caldwell also denied that motion, finding it was both untimely and an unauthorized second or successive motion. (Doc. 259).

Sanchez filed the instant Section 2255 motion on August 29, 2016, and appointed Johnson counsel filed a supplemental motion on November 4, 2016. After several stays pending the outcomes of related Supreme Court and Third Circuit cases, the motion is fully briefed and ripe for disposition.

II. **Standard of Review**

Under Section 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that

3

the sentence was imposed in violation of the Constitution or the laws of the United States." Id. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

### III. Discussion

The ACCA compels a mandatory minimum sentence of 15 years' imprisonment for defendants convicted under 18 U.S.C. § 922(g) who have acquired three prior, adult convictions for a "violent felony" or a "serious drug offense" that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Act defines "serious drug offense" to include, *inter alia*, state-law offenses for manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance for which the maximum term of imprisonment is 10 years or more. Id. § 924(e)(2)(A)(ii). The Act defines "violent felony" to include any offense punishable by imprisonment for more than one year which falls within one of three categories: (1) crimes having "as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) crimes of burglary, arson,

4

or extortion, or which involve use of explosives; and (3) crimes which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(i)-(ii). Courts refer to the first clause as the "force clause," the second as the "enumerated offenses clause," and the third as the "residual clause."

The Supreme Court in Johnson invalidated the residual clause of the ACCA's violent-felony definition as unconstitutionally vague. Johnson v. United States, 576 U.S. \_\_\_, 135 S. Ct. 2551, 2557 (2015). But Johnson left untouched the "serious drug offense" predicate, and the Court explicitly stated that its decision "does not call into question" the force or enumerated-offense clauses. See id. at 2563. Thus, a defendant may still qualify for an enhanced sentence under the ACCA if they have three or more convictions that qualify under one of the remaining provisions. The Supreme Court has declared Johnson to be retroactively applicable on collateral review. Welch v. United States, 578 U.S. \_\_\_, 136 S. Ct. 1257, 1265 (2016).

Sanchez asserts that, following Johnson, he no longer has the minimum number of qualifying prior-felony convictions to support an armed-career-criminal designation under the ACCA. Sanchez also asserts that Johnson applies with equal force to an identical residual clause in the career-offender provision of the United States Sentencing Guidelines. The government opposes Sanchez's motion. Before turning to the merits of Sanchez's claim, we first address the threshold question of whether we have jurisdiction to entertain this second or successive Section 2255 motion.

### A. Second or Successive Motion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") strengthened the procedural and substantive prerequisites for second or successive motions under 28 U.S.C. § 2255. See Goldblum v. Klem, 510 F.3d 204, 216 (3d Cir. 2007). The AEDPA contemplates only two types of second or successive motions: (1) those based on newly discovered evidence sufficiently undermining guilt, and (2) those grounded in "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Before filing a motion with the district court, a defendant must move in the appropriate court of appeals for an order authorizing a second or successive motion. Id. §§ 2244(b)(3)(C), 2255(h). The court of appeals conducts a "preliminary examination" to assess whether the motion satisfies the procedural requirements of Section 2244(b)(3)(C). See United States v. Peppers, 899 F.3d 211, 221 (3d Cir. 2018) (citing Goldblum, 510 F.3d at 217-20). If the court of appeals determines that the defendant has made a "*prima facie* showing" as to the statute's requirements, the defendant may file the second or successive petition in the district court. See 28 U.S.C. § 2244(b)(3).

Court of appeals authorization, however, is not synonymous with district court jurisdiction. Authorization evinces only that the movant has made "a sufficient showing of *possible* merit to warrant a fuller exploration by the district court." Goldblum, 510 F.3d at 219 (emphasis added) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)). The district court must independently

6

satisfy itself that the movant fulfills the jurisdictional requirements of § 2255(h). See 28 U.S.C. § 2244(b)(4); see also Goldblum, 510 F.3d at 220. The Third Circuit has described the district court's inquiry as "more extensive" and "more thorough" than the appellate court's *prima facie* review. Peppers, 899 F.3d at 221 (quoting Goldblum, 510 F.3d at 220). Hence, the ultimate gatekeeping determination rests with the district court.

Sanchez properly sought and obtained leave from the Third Circuit Court of Appeals to file the instant motion, (see Doc. 265), his fourth under Section 2255. Specifically, on August 29, 2016, the Third Circuit issued an order finding that in light of the Supreme Court's decisions in Johnson and Welch, Sanchez has made the requisite *prima facie* showing to authorize a second-or-successive motion. (Doc. 265). Hence, we must conduct our gatekeeping function and ask whether Sanchez's claims in fact invoke a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h); Peppers, 899 F.3d at 221 (citing Goldblum, 510 F.3d at 219-20).

1. *Career-Offender Challenge*

Sanchez's career-offender challenge cannot meet this standard. Sanchez claims that Johnson recognized a new rule that applies retroactively to invalidate both his armed-career-criminal status under the ACCA and his career-offender status under the mandatory Sentencing Guidelines. Sanchez's career-offender theory was tenable when the Third Circuit authorized his second-or-successive motion as containing a new rule of constitutional law three years ago. But case law has since developed to preclude this claim.

7

Sanchez was sentenced as a career offender before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), when the Guidelines were mandatory. At the time Sanchez's instant motion was authorized, a Third Circuit Court of Appeals panel had held that Johnson naturally extends to invalidate the identically worded residual clause in the career-offender Guidelines. See United States v. Townsend, 638 F. App'x 172, 178 & n.14 (3d Cir. 2015) (nonprecedential). The Supreme Court rejected that view in Beckles v. United States, 580 U.S. ___, 137 S. Ct. 886 (2017), expressly declining to extend Johnson to the advisory Guidelines career-offender provision. Beckles, 137 S. Ct. at 895, 897. The Court couched its holding in terms of the "*advisory* Guidelines," see id. at 890, 895, 897 (emphasis added), leaving open whether Johnson provides relief to career offenders sentenced pre-Booker, see id. at 903 n.4 (Sotomayor, J., concurring in the judgment). The Third Circuit recently answered that open question, holding that Johnson "created a right *only* as to the ACCA" and "did not recognize a right to bring a vagueness challenge to the mandatory Sentencing Guidelines." United States v. Green, 898 F.3d 315, 321 (3d Cir. 2018), cert. denied, 139 S. Ct. 1590 (2019).

Because Johnson has been circumscribed to apply only to the ACCA, we cannot conclude that Sanchez's career-offender challenge relies on a "new rule" recognized and made retroactive on collateral review by the Supreme Court. 28

U.S.C. § 2255(h)(2); see In re Hoffner, 870 F.3d 301, 309 (3d Cir. 2017). Accordingly, we must deny this aspect of Sanchez's motion for lack of jurisdiction.[1]

### 2. *ACCA Challenge*

As to his ACCA claim, however, Sanchez clears the procedural hurdle. Sanchez is not required to prove that he necessarily will prevail on his Johnson claim. The gatekeeping requirements of Section 2255(h) task Sanchez to show only "that his sentence *may* be, not that it *must* be, unconstitutional in light of a new rule of constitutional law made retroactive by the Supreme Court." Peppers, 899 F.3d at 221-22 (emphasis added). Johnson's invalidation of the ACCA's residual clause is a new rule of constitutional law made retroactive on collateral review by the Supreme Court. Welch, 136 S. Ct. at 1265. The information charging Sanchez's prior felonies explicitly invokes the residual clause and the force clause to support a 1982 grand-theft conviction as a predicate, and only the residual clause to support the three 1983 burglary convictions. (Doc. 6 at 1-2). At sentencing, the court did not specify which of the five charged prior felony convictions qualified as ACCA predicates, nor

---

[1] Sanchez's career-offender challenge is untimely for much the same reason. Section 2255(f) establishes a one-year limitations period which runs from the latest of, *inter alia*, the date on which the judgment became final or "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(1), (3). Sanchez's judgment became final decades ago, so the timeliness of his career-offender claim hinges on the scope of Johnson. The Third Circuit's decision in Green makes clear that the only "right" recognized by Johnson concerns the ACCA. Sanchez's career-offender claim has no Johnson hook and is thus untimely. Sanchez's counsel ostensibly concedes as much: in a notice apprising us of the denial of *certiorari* in Green, counsel stated that Sanchez's "challenge to his designation as an armed career criminal should proceed." (Doc. 284 at 2).

9

which ACCA clause it relied on in imposing Sanchez's enhanced sentence. (See Sent. Tr. 3:1-18). Thus, Sanchez has made the requisite preliminary showing that his sentence *may* be unconstitutional in light of Johnson.

### B. Merits of the Johnson Claim

Sanchez contends that the none of the prior felony convictions charged in the government's information qualify today as ACCA predicates. (See Doc. 267 at 8-12). Sanchez's theory is threefold: *first*, that we do not have enough information to assess whether his three Pennsylvania controlled-substance convictions qualify as separate ACCA predicates; *second*, that the two California burglary convictions, charged only under the residual clause, are no longer ACCA predicates following Johnson and Descamps; and *third*, that the California grand-theft conviction, charged under both the force and residual clauses, does not qualify under the force clause and cannot qualify under the invalidated residual clause. (See id.) Because we disagree with Sanchez on his first contention, we need not address the balance of his arguments.

Sanchez does not dispute that each of his three Pennsylvania convictions for delivery of cocaine qualifies as a "serious drug offense" as that term is defined in the ACCA. (Doc. 267 at 8-9). He instead contends that there is no proof that these offenses were "committed on occasions different from one another" as required under the statute. (Id.); see 18 U.S.C. § 924(e)(1). The government answers this argument by supplying certified state-court records establishing the date of offense for each of Sanchez's prior felony drug convictions. (See Doc. 290 at 9-10).

10

The Supreme Court in <u>Shepard v. United States</u>, 544 U.S. 13 (2005), identified the types of materials that courts may examine to determine whether a particular offense qualifies as a "violent felony" under the ACCA. <u>See</u> <u>Shepard</u>, 544 U.S. at 26. Those materials—often referenced as "<u>Shepard</u> documents"—include charging documents, plea agreements, plea-colloquy transcripts, and jury instructions. <u>See id.</u>; <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990). The Third Circuit has looked to <u>Shepard</u> documents outside of the violent-felony context, including to decide whether a prior drug conviction is a "serious drug offense," <u>see</u> <u>Gibbs v. United States</u>, 656 F.3d 180, 187 (3d Cir. 2011), and whether offenses were "committed on occasions different from one another," <u>see</u> <u>United States v. Blair</u>, 734 F.3d 218, 227-28 (3d Cir. 2013). Accordingly, we look to the materials supplied by the government to determine whether Sanchez's Pennsylvania delivery-of-cocaine convictions are separate offenses for ACCA purposes.

The <u>Shepard</u> documents in this case include the charging information for each of Sanchez's prior delivery-of-cocaine convictions, and they specifically identify the date and location of each offense. (Doc. 290-1 at 6, 8, 13). They detail Sanchez's charges as follows:

- on December 21, 1988, Sanchez delivered cocaine at Ivy Lane, Apartment 7, in Harrisburg, Pennsylvania;

- on December 22, 1988, Sanchez delivered cocaine at 48 Row Hall Manor, in Harrisburg, Pennsylvania; and

- on December 27, 1988, Sanchez delivered cocaine at Building 2, Apartment 7, Ivy Lane, in Harrisburg, Pennsylvania.

(Id.)  Sanchez pled guilty to all three charges on June 19, 1989.  (Doc. 290-1 at 7, 9, 14; see also Presentence Report ¶ 51).  The cases were consolidated for sentencing, and Sanchez received a sentence of 6 to 23 months' imprisonment on each count, to run concurrently.  (See Presentence Report ¶ 51).

Sanchez has not responded to the Shepard documents, presumably because prevailing law would defeat any claim that his prior drug convictions constitute a single offense.  The Third Circuit has held that prior convictions may be counted separately under the ACCA when they arise from "separate episodes" of criminal activity that "were distinct in time."  United States v. Schoolcraft, 879 F.2d 64, 73-74 (3d Cir. 1989) (citations omitted).  Applying this test, the Third Circuit has held that robberies separated by just one day are "separate" offenses.  Blair, 734 F.3d at 228.  Indeed, the court cited with approval a decision holding that robberies separated by only 45 minutes are sufficiently distinct in time.  Id. at 229 (citing United States v. Brady, 988 F.2d 664, 668-70 (6th Cir. 1993) (*en banc*)).

The Third Circuit has not applied the separate-episodes test to drug-trafficking predicates in a precedential opinion.  But the robust consensus among its nonprecedential authority is that drug transactions constitute separate episodes when they are sufficiently distinct in time that the defendant had an opportunity to cease the criminal activity.  See United States v. Ward, 753 F. App'x 112, 114-15 (3d Cir. 2018) (nonprecedential) (citation omitted); United States v. Chatham, 487 F. App'x 769, 771 (3d Cir. 2012) (nonprecedential) (citation omitted).  This is so even when the subject drug deals are separated by mere days, involve the same confidential informant or undercover officer, occur at the same place, and are

12

prosecuted and sentenced together. See, e.g., Ward, 753 F. App'x at 114-15 (two days, same informant); United States v. Swan, 661 F. App'x 767, 770 (3d Cir. 2016) (nonprecedential) (four days); Chatham, 487 F. App'x at 771-72 (five days, same undercover agent).

Against this backdrop, Sanchez's convictions for delivery of cocaine on December 21, December 22, and December 27, 1988, qualify as "separate episodes." Because these three serious drug offenses put Sanchez over the ACCA threshold, we need not determine whether his California burglary and grand-theft convictions qualify as violent felonies after Johnson. Sanchez was, and is, properly designated an armed career criminal under the ACCA.

### IV. Conclusion

We conclude that Sanchez is not entitled to Section 2255 relief based on the Supreme Court's decision in Johnson. We will deny Sanchez's motion to vacate and correct sentence pursuant to 28 U.S.C. § 2255. We will also deny a certificate of appealability, as Sanchez has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     November 13, 2019